# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CARA GIBSON, Administratrix of the Estate of David Thomas Gibson, Widow of David Thomas Gibson, and Mother of Brooklyn and Charles Gibson, minors<br>355 Richards Road<br>Patriot, OH 45658 | :<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>: |
| Plaintiff, | :<br>: JUDGE |
| v. | :<br>: MAGISTRATE JUDGE |
| MATT CHAMPLIN, in his official capacity as Gallia County, OH Sheriff,<br>18 Locust St.<br>Gallipolis, OH 45631, | :<br>:<br>:<br>: |
| and | : |
| KEVIN WERRY, in both his individual and official capacities as Gallia County, OH Supervisor and Sheriff's Lieutenant,<br>18 Locust St.<br>Gallipolis, OH 45631, | :<br>:<br>:<br>:<br>: |
| and | : |
| TROY JOHNSON, in both his individual and official capacities as a Gallia County, OH Sheriff's Chief Deputy and Jail Correctional Officer,<br>18 Locust St.<br>Gallipolis, OH 45631, | :<br>:<br>:<br>:<br>:<br>: |
| and | : |
| EMERSON HUNTER BENNETT, in both his individual and official capacities as a Gallia County, OH Sheriff's Deputy and Jail Correctional Officer<br>18 Locust St. | :<br>:<br>:<br>:<br>: |

1

Gallipolis, OH 45631, :
:
    and :
:
MICHAEL FINK, in both his individual and :
official capacities as a Gallia County, OH :
Sheriff's Deputy and Jail Correctional Officer :
18 Locust St. :
Gallipolis, OH 45631, :
:
    and :
:
CHRISTOPHER QUEEN, in both his individual :
and official capacities as a Gallia County, OH :
Jail Correctional Officer, :
18 Locust St. :
Gallipolis, OH 45631, :
:
    and :
:
DEBRA SMITH, in both her individual and :
official capacities as a Gallia County, OH :
Jail Correctional Officer :
18 Locust St. :
Gallipolis, OH 45631, :
:
    and :
:
CAROL BRALEY, in both her individual :
and official capacities as a Gallia County, OH :
Jail Correctional Officer, :
18 Locust St. :
Gallipolis, OH 45631, :
:
    and :
:
MISTY CLAY, in both her individual :
and official capacities as a Gallia County, OH :
Jail Correctional Officer, :
18 Locust St. :
Gallipolis, OH 45631, :
:
    and :
:
BROOKLYN STAPLETON, in both her individual :
and official capacities as a Gallia County, OH :

2

| | |
|---|---|
| Jail Correctional Officer, | : |
| 18 Locust St. | : |
| Gallipolis, OH 45631, | : |
| | : |
|     and | : |
| | : |
| ANDREW RECTENWALD AND/OR | : |
| CORRECTIONS OFFICER – 11, in both his | : |
| Individual and official capacities as a Gallia | : |
| County, OH, Jail Correctional Officer, | : |
| 18 Locust St. | : |
| Gallipolis, OH 45631, | : |
| | : |
|     and | : |
| | : |
| CORRECTIONS OFFICER - 15, | : |
| NAME UNKNOWN, in both his/her individual | : |
| and official capacities as a Gallia County, OH | : |
| Jail Correctional Officer, | : |
| 18 Locust St. | : |
| Gallipolis, OH 45631, | : |
| | : |
|     and | : |
| | : |
| GALLIA COUNTY, OHIO, | : |
| c/o Harold Montgomery, M. Eugene Greene, | : |
| and Q. Jay Stapleton, in their official | : |
| capacities as Gallia County Commissioners, | : |
| 18 Locust St. Rm. 1292 | : |
| Gallipolis, OH 45631, | : |
| | : |
|     and | : |
| | : |
| JOHN/JANE DOE SUPERVISORS #1-10 | : |
| Names and Addresses, Unknown | : |
| | : |
|     and | : |
| | : |
| JOHN/JANE DOE | : |
| CORRECTIONS OFFICERS #1-10 | : |
| Names and Addresses, Unknown | : |
| | : |
|                        Defendants. | : |

## **COMPLAINT**

**I.      Preliminary Statement**

1.      This civil rights, wrongful death, survivor, and loss of consortium action arises from the deliberate indifference, recklessness, and gross negligence of Gallia County Jail correctional officers, administrators, and policymakers which foreseeably increased the pain and anxiety and then caused the death of David Thomas Gibson, a pre-trial detainee in their custody, from his medical condition of substance use disorder, depression, and suicidal ideations, about which jail staff had been informed by Mr. Gibson's mother, a nurse practitioner from Hopewell Health Centers who visited Mr. Gibson the day before he attempted suicide, and by Mr. Gibson who cried out for help continuously during his stay. Jail staff and administrators acted with deliberate indifference when they: (1) ignored his symptoms of drug withdrawal that were obvious from the date of his incarceration (9/9/19) until the date of his attempted suicide (9/14/19); (2) failed to monitor him while he was placed in isolation; (3) failed to administer his withdrawal packet, as prescribed by the nurse practitioner; and (4) repeatedly ignored his change in condition when he screamed for help, but instead shut the door to the isolation cell to avoid listening to his screams. In addition, Plaintiff has reason to believe that jail staff and administrators violated their own policies and procedures, thus foreseeably increasing Mr. Gibson's pain and distress and causing his death, and thereby violating his right to due process under the Fourteenth Amendment and their duties under the common law of the State of Ohio.

**II.     Jurisdiction and Venue**

2.      This Court has jurisdiction by virtue of the Civil Rights Act of 1871, 42 U.S.C. § 1983; 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

4

3. Declaratory, injunctive, equitable relief, compensatory, and, against officers sued in their individual capacity, punitive damages are sought pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 2201; 2202, and the common law of the State of Ohio.

4. Costs and attorneys' fees may be awarded pursuant to the 42 U.S.C. § 1988; Fed. R. Civ. P. 54; and the common law of the State of Ohio.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1(b) because Defendants are located in Gallia County, Ohio, where the events giving rise to this action occurred.

### III. Parties

6. Plaintiff Cara Gibson was lawfully married to David Thomas Gibson and is the mother of their two minor children, Brooklyn Gibson and Charles Gibson. Cara Gibson brings this suit as the Administratrix of David Thomas Gibson's Estate, as appointed by the Gallia County Probate Court on November 8, 2019, Case No. 20191151.

7. Defendant Matt Champlin is the Sheriff of Gallia County, Ohio; was elected as Sheriff in 2017 and in 2020; is being sued in his official capacity; is a "person" under 42 U.S.C. § 1983; acted under color of state law at all times relevant to this action; is responsible under R.C. § 341.01 and the policies, practices, and customs of Defendant Gallia County for keeping incarcerated persons safe in the Gallia County Jail and establishing policies and practices for monitoring and responding to the serious medical conditions of incarcerated persons; and is responsible for employing, supervising, and training subordinate Jail personnel on those policies and practices.

8. Defendant Gallia County Supervisor Lt. Kevin Werry was delegated by Defendant Champlin responsible for keeping incarcerated persons safe in the Gallia County Jail; establishing

policies and practices for the operations of the Jail, including those on monitoring and responding to prisoners who are suffering from serious medical conditions; and is responsible for employing, supervising, and training subordinate Jail personnel on those policies and practices; is being sued in both his official and, due to his role in refusing to address Mr. Gibson's withdrawal symptoms and suicidal ideations, individual capacities; is a "person" under 42 U.S.C. § 1983; and acted under color of state law at all times relevant to this action.

9. Defendant Troy Johnson is a Gallia County Sheriff's Deputy who serves as a Jail Correctional Officer; is a "person" under 42 U.S.C. § 1983; acted under color of state law at all times relevant to this action; is being sued in both his individual, due to his role in failing to respond to Mr. Gibson's medical needs, and official capacities; and is assigned by Defendants Champlin and Werry to implement the policies, practices, and customs of Defendant Gallia County for keeping incarcerated persons safe at the Gallia County Jail, including those on monitoring and responding to prisoners who are suffering from serious medical conditions; and received supervision and training from superiors on such policies and practices.

10. Defendants Emerson Hunter Bennett and Michael Fink are Gallia County Sheriff's Deputies who serve as Jail Correctional Officers; are a "person" under 42 U.S.C. § 1983; acted under color of state law at all times relevant to this action; are being sued in both their individual, due to their role in failing to monitor Mr. Gibson while in isolation (D Block), failing to respond to his medical needs, and failing to properly administer his medications, and official capacities; and are assigned by Defendants Champlin and Werry to implement the policies, practices, and customs of Defendant Gallia County for keeping incarcerated persons safe at the Gallia County Jail, including those on monitoring and responding to prisoners who are suffering from serious

6

medical conditions; and received supervision and training from superiors on such policies and practices.

11. Defendants Christopher Queen, Carol Braley, Debra Smith, Misty Clay, and Brooklyn Stapleton, are Gallia County Jail Correctional Officers; are a "person" under 42 U.S.C. § 1983; acted under color of state law at all times relevant to this action; are being sued in both their individual, in failing to monitor Mr. Gibson while in isolation (D Block), failing to respond to his medical needs, and failing to properly administer his medications, and official capacities; and are assigned by Defendants Champlin and Werry to implement the policies, practices, and customs of Defendant Gallia County for keeping incarcerated persons safe at the Gallia County Jail, including those on monitoring and responding to prisoners who are suffering from serious medical conditions; and received supervision and training from superiors on such policies and practices.

12. Defendant Andrew Rectenwald and/or Corrections Officer – 11[1] is a Gallia County Jail Correctional Officer; is a "person" under 42 U.S.C. § 1983; acted under color of state law at all times relevant to this action; is being sued in both his individual, due to his role in failing to monitor Mr. Gibson while in isolation (D Block), failing to respond to his medical needs, and failing to properly administer his medications, and official capacities; and is assigned by Defendants Champlin and Werry to implement the policies, practices, and customs of Defendant Gallia County for keeping incarcerated persons safe at the Gallia County Jail, including those on monitoring and responding to prisoners who are suffering from serious medical conditions; and received supervision and training from superiors on such policies and practices.

---

[1] Plaintiff has reason to believe that the person identified as "CO-11" in the shift log reports provided in response to a public records request is Andrew Rectenwald. Despite several requests to identify the Corrections Officers by name, the Sheriff's Department has not responded. Plaintiff will seek leave to amend her pleading to correctly identify "CO-11", by name.

7

13. Corrections Officer – 15 is a Gallia County Jail Correctional Officer; is a "person" under 42 U.S.C. § 1983; acted under color of state law at all times relevant to this action; is being sued in both his/her individual, due to his role in failing to monitor Mr. Gibson while in isolation (D Block), failing to respond to his medical needs, and failing to properly administer his medications, and official capacities; and is assigned by Defendants Champlin and Werry to implement the policies, practices, and customs of Defendant Gallia County for keeping incarcerated persons safe at the Gallia County Jail, including those on monitoring and responding to prisoners who are suffering from serious medical conditions; and received supervision and training from superiors on such policies and practices. The true name of Corrections Officer – 15 could not be discovered by the Plaintiff at this time and the Plaintiff has, accordingly, sued this unknown Defendant under the only identity known to her. When the true name of said Corrections Officer – 15 has been ascertained, Plaintiff will seek leave to amend her Complaint accordingly.

14. Defendant Gallia County, Ohio, reached through its Board of County Commissioners, who are named only in their official capacity as the policymaking and legislative body of the County and sue-and-be-sued status under R.C. § 305.12, is a unit of local government established under the laws of the State of Ohio with the ultimate authority to adopt Gallia County policies, practices, and customs for keeping incarcerated persons safe in the Gallia County Jail and established policies and practices for monitoring and responding to prisoners suffering from serious medical conditions; and supervision and training subordinate Jail personnel on such policies and practices; and, at all times relevant to this complaint, was a "person" under 42 U.S.C. § 1983 and acted under color of state law.

15. Defendants John/Jane Doe Supervisors #1-10 were delegated by Defendant Champlin responsibility for keeping incarcerated persons safe in the Gallia County Jail;

establishing policies and practices for the operations of the Jail, including those on monitoring and responding to prisoners who are suffering from serious medical conditions; and are responsible for employing, supervising, and training subordinate Jail personnel on those policies and practices; are being sued in both their official and, due to their role in refusing to address Mr. Gibson's withdrawal symptoms and suicidal ideations, individual capacities; are a "person" under 42 U.S.C. § 1983; and acted under color of state law at all times relevant to this action.

16. Defendants John/Jane Doe Corrections Officers #1-10 are a "person" under 42 U.S.C. § 1983; acted under color of state law at all times relevant to this action; are being sued in both their individual, due to their role in failing to monitor Mr. Gibson while in isolation (D Block), failing to respond to his medical needs, and failing to properly administer his medications, and official capacities; and are assigned by Defendants Champlin and Werry to implement the policies, practices, and customs of Defendant Gallia County for keeping incarcerated persons safe at the Gallia County Jail, including those on monitoring and responding to prisoners who are suffering from serious medical conditions; and received supervision and training from superiors on such policies and practices.

17. The true names and capacities of Defendants John/Jane Doe Supervisors #1-10 and John/Jane Doe Corrections Officers #1-10 are unknown to Plaintiff. Plaintiff sues these Defendants under these fictitious names and asks permission to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained.

**IV.     Facts**

18. On September 8, 2019, David Thomas Gibson ("Mr. Gibson") was arrested and booked into the Gallia County Jail for one count of domestic violence, a first-degree misdemeanor.

Bond was posted at $0.00. The booking documents in Plaintiff's possession do not reflect Mr. Gibson's condition at the time of his arrest, nor do they bear Mr. Gibson's signature.

19. Upon booking, Mr. Gibson was put into general population in "A Block" with other inmates.

20. During the time he was incarcerated, Mr. Gibson showed obvious symptoms of substance use withdrawal. Plaintiff has reason to believe that he was in pain, vomiting, and crying for help.

21. During his incarceration, Mr. Gibson complained constantly to jail staff and other inmates his feelings of despair, depression, and pain. Plaintiff has reason to believe that on September 9, 2019, Mr. Gibson tested positive on a urine drug screen for methamphetamines and suboxone. Plaintiff has reason to believe that Mr. Gibson submitted two requests for a medical consultation, both of which were ignored.

22. The Health Department tasked with assessment of, and routine care of all inmates was not made aware of Mr. Gibson's incarceration, let alone his positive drug screen, obvious medical and psychological decline, and acute withdrawal until the afternoon of September 13, 2019,[2] four days following his arrest. His intake paperwork was not provided to the Health Department staff in the general fashion that would allow a visit with the nurse practitioner, who was already present and available to see Mr. Gibson prior to the 13th of September (see image below).

---

[2] Plaintiff has reason to believe that the letter from Gallia County's Health Department presents a typographical error in the date (9/13/2020). Medical records confirm that the first and only encounter with Mr. Gibson was on 9/13/2019.

10

> To Whom It May Concern:
>
> The Health Department staff was not made aware of Mr. Gibson's incarceration or symptoms of withdraw until 09/13/2020 in the afternoon. His intake paperwork was not provided to Health Department staff in the general fashion at the facility to result in visit with the nurse practitioner. Kim Brumfield, NP had been in the office that morning 8 am-10 am, without a request to see patient reported. Please contact our office if additional questions or concerns.
>
> Thank you,
>
> *Latasha Alvaro, MSN, FNP*
> Gallia County Health Department
> 740-441-2947

23. On September 13, 2019, around 2:00 p.m., Rebecca Ashburn from Hopewell evaluated Mr. Gibson who reported suicidal thoughts (but no plan at the time), anxiety, and depression. Nurse Ashburn prescribed a detox pack and recommended he be placed in isolation for 24 hours to begin withdrawal. Jail staff placed him in isolation (D Block) and gave him a **blanket**. Mr. Gibson took a turn for the worse overnight. At 01:30 on 9/14/2019 he expressed a desire to leave isolation and come to booking. Defendant Corrections Officer – 11 (Andrew Rectenwald) denied his request, according to his official log entry.

24. On the morning of September 14, 2019, following a brief family visit, Mr. Gibson was placed back in D Block (isolation). He asked Defendants Bennett and Braley not to put him back in isolation, but his request was denied. Plaintiff has reason to believe that Defendants Bennett and/or Braley closed the solid metal door in addition to securing the prison bars door in D Block, to avoid hearing his screams. That left Mr. Gibson alone in the dark

25. During his stay in isolation, Mr. Gibson could be heard going through drug withdrawal, yelling, screaming, begging to be let out. After 10 a.m., the banging and yelling stopped. Inmates called out for staff to check on Mr. Gibson. At 10:35 a.m. Defendant Bennett found Mr. Gibson hanging from the bars by his blanket. At the time, Defendant Bennett was taking another inmate (McIntosh) to visitation.

26. Upon seeing Mr. Gibson hanging from the bars, Defendant Bennett utilized the assistance of inmate McIntosh to release Mr. Gibson. Defendant Bennett along with another staff member attempted CPR and the AED Defibrillator. EMS transported Mr. Gibson to Holzer. Later he was taken to Grant Hospital where he remained on a ventilator until he passed away on September 16, 2019.

27. Per Jail policy and/or its standard practice or custom, superior officers, including the Officer in Charge and/or Jail Commander, retained discretion on whether an inmate's serious medical needs were to be treated by EMS.

28. Against established Jail policy, Jail staff failed to timely inform the nurse practitioner that Mr. Gibson was exhibiting substance use withdrawal and failed to monitor his obvious change in condition.

29. Mr. Gibson continued his verbal requests to be removed from isolation, his complaints from D Block being so loud that inmates in C Block overheard him making these requests.

30. Contrary to established Jail policy, Defendants Clay, Queen, Braley, Smith, Stapleton, Bennet, Fink, Rectenwald, and CO-15 failed to document in the Shift Log Report that Mr. Gibson was sick, whether he was given his withdrawal medication, and whether he was properly monitored considering his mental condition and suicidal ideations. The records reflect that the prescribed medication contained in the detox pack were not properly given to Mr. Gibson.

31. According to the Shift Log Reports in Plaintiff's possession, none of the shift change briefings discuss Mr. Gibson or his condition.

32. There is no way of knowing what transpired in D Block that day. Even though a surveillance camera that would capture D. Block was mounted, Plaintiff has been informed that it was not operational on that day.

33. Mr. Gibson's autopsy revealed his manner of death was suicide, with his cause of death reported as hypoxic/ischemic encephalopathy due to near hanging.

34. Mr. Gibson's death was caused by the deliberate indifference of Defendants to his serious medical needs when they ignored his symptoms of drug withdrawal that were obvious from the date of his incarceration (9/9/19) until the date of his attempted suicide (9/14/19) and confirmed on a urine screen test; failed to monitor him while he was placed in isolation; failed to administer his withdrawal packet, as prescribed by the nurse practitioner; repeatedly ignored his change in condition when he screamed for help, but instead shut the door to the isolation cell to avoid listening to his cries for help; failed to inform its staff on incoming shifts about Mr. Gibson's condition; ignored his obvious change in condition overnight on 9/13/19; and repeatedly refused to check on him after hearing him cry for help and being advised of his calls for assistance by multiple inmates.

35. But for the deliberate indifference of Defendants to Mr. Gibson's serious medical condition, causing a significant delay in treatment, Mr. Gibson could have been treated at a behavioral center and timely received treatment for drug withdrawal.

36. The Jail ostensibly had policies in place that inmates with serious medical needs should be examined and, when necessary, taken to the hospital for treatment.

37. The way the Jail implemented its policies and trained and supervised its staff on those policies caused their deliberate indifference to Mr. Gibson's serious medical needs.

38. At all times material to this complaint, the Jail had a policy providing for its jail staff and administrators to monitor inmates that might be suicidal.

39. Defendants Sheriff Champlin and Jail Commander Werry never adequately trained or directed Jail staff about the need to investigate and act upon signs of inmates being suicidal, or inmates going through drug withdrawal.

40. Had Defendants Sheriff Champlin and Jail Commander Werry trained, directed, or supervised Jail staff in recognizing, investigating, and acting upon signs of inmates being seriously sick and suicidal, Mr. Gibson would not have suffered pain and anxiety from delayed medical treatment and would not have died due to his serious medical condition.

41. Any reasonably competent Jail Commander or Correctional Officer would have known that an inmate who presents with a substance use problem as Mr. Gibson should have been immediately referred to a nurse practitioner and should have been closely monitored for any change in condition, and that appropriate care should have been taken upon observing a change in condition, and that failing to do so would constitute deliberate indifference in violation of the inmate's constitutional rights.

42. The County and the Jail and its administrators were on notice before the events resulting in Mr. Gibson's suffering of pain and anxiety and his death that prisoners with serious medical conditions, including drug addiction, depression, and suicidal ideation, were being inadequately treated.

43. The County and the Jail and its administrators were on notice before the events resulting in Mr. Gibson's suffering of pain and anxiety and his death that Correctional Officers were flouting policies, ignoring training, and failing to ensure that prisoners were being adequately treated for their serious medical conditions.

44. The failure of the County and the Jail and its administrators to train and supervise Correctional Officers in a way that ensured prisoners were being adequately treated for their serious medical conditions contributed to the pain, anxiety, and death of Mr. Gibson.

45. It was readily foreseeable to the County and the Jail and its administrators, prior to Mr. Gibson's death, that, unless it provided training, adopted a policy, and/or effectively supervised Jail staff to ensure that they were implementing and training a policy on recognizing, investigating, and acting upon inmates' serious medical needs, inmates who suffered from serious medical needs would suffer injuries, pain, anxiety, and have fatal or near-fatal experiences in circumstances indicating a need for treatment of those serious medical conditions.

46. The Defendants sued in their individual capacities are not entitled to Qualified Immunity for the acts/omissions set forth in this complaint.

47. The law was clearly established in the Sixth Circuit and other Federal Circuits at the time of Mr. Gibson's incarceration that deliberate indifference to an inmate's serious medical needs violates an inmate's constitutional rights.

48. Defendants' conduct shocks the conscience, violates the standards of decency in an evolving society, and betrays the trust that inmates and the public place in jail staff to provide proper medical care to those over whom they exercise custody.

49. As a direct and proximate result of Defendants' deliberate indifference and willful, wanton, reckless, and grossly negligent acts and omissions, Mr. Gibson suffered the ultimate due process violation, the deprivation of his life.

50. As a direct and proximate result of Mr. Gibson's wrongful death, his survivors and heirs have suffered permanent damages, including but not limited to grief, depression, and severe emotional distress; loss of household income, support services and society, including loss of

companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, as well as the loss of prospective inheritance; and the expenses of funeral bills and/or medical treatment.

51. As a direct and proximate result of Defendants' deliberate indifference and willful, wanton, reckless, and grossly negligent acts and omissions, Ms. Gibson needlessly suffered pain and anxiety.

52. As a direct and proximate result of Mr. Gibson's wrongful death, his wife Cara Gibson has suffered the loss of consortium, services, support, counsel, and society of Mr. Gibson, and will continue to be deprived into the future.

53. As a direct and proximate result of Mr. Gibson's wrongful death, his minor children have suffered loss of consortium, including but not limited to, the services, love, and affection of their father.

V. **Claims**

    A. **Count I: Deprivation of Due Process under the Fourteenth Amendment**

54. Paragraphs 1 through 53 above are realleged and incorporated herein.

55. By their deliberate indifference to Mr. Gibson's serious medical condition, failure to timely address his condition of drug withdrawal, failure to administer his withdrawal packet as prescribed by the nurse practitioner, failure to monitor him while placed in isolation, failure to recognize his change in condition, and deliberately ignoring his cries for help by placing him in isolation with a blanket, Defendants Jail Administrators, Deputies, and Correctional Officers deprived Mr. Gibson of his liberty – the right to be incarcerated without deliberate indifference to his serious medical needs – in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

56. By their failing to adopt policies, train, and/or supervise COs on the foreseeable need to closely monitor inmates and/or report changes in condition to superiors and/or EMS; investigate signs of inmates being sick or exhibiting changes in condition; and/or to transport to a hospital for advanced treatment inmates who are suffering from a serious medical condition, Defendants Sheriff and Jail Commander caused the deprivation of Mr. Gibson's liberty – to be incarcerated without deliberate indifference to his serious medical needs – in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and thereby causing his wrongful death.

B. **Count II: Wrongful Death**

57. Paragraphs 1 through 56 above are realleged and incorporated herein.

58. By their acts and omissions, Defendants sued in their individual capacities caused Mr. Gibson's wrongful death, resulting in damages recoverable under R.C. 2124.02.

C. **Count III: Gross Negligence**

59. Paragraphs 1 through 58 above are realleged and incorporated herein.

60. The Defendants sued in their individual capacities are liable for their willful, wanton, and reckless acts and/or omissions, including but not limited to, acting with deliberate indifference to Mr. Gibson's serious medical needs, failure to adequately monitor Mr. Gibson for changes in condition, failure to report known changes in condition, failure to provide prompt medical treatment, failure to timely respond to his symptoms of drug withdrawal, and willful conduct in failing to administer his withdrawal medication properly, failing to keep record of his condition, failing to inform colleagues about his condition during shift changes, and placing Mr. Gibson in isolation, shutting a solid door to D Block, and leaving him in the dark with a blanket after he had expressed despair and thoughts of suicide.

D.  **Count IV: Loss of Consortium**

61. Paragraphs 1 through 60 above are realleged and incorporated herein.

62. By their actions and inactions, Defendants sued in their individual capacities caused Mr. Gibson's wife and minor children to suffer loss of consortium.

VI. **Prayer for Relief**

WHEREFORE, Plaintiffs are entitled to and pray for the following relief:

A.  a declaration that Defendants, jointly or severally, have violated David Thomas Gibson's civil rights, and Defendants sued in their individual capacity recklessly inflicted a wrongful death on him, were grossly negligent causing him pain and anxiety and death, and imposed loss of consortium on his wife and children;

B.  order such equitable relief as will make the Estate of David Thomas Gibson whole for Defendants' unlawful conduct;

C.  enjoin Defendant from operating the Gallia County Jail without adequate training and/or supervision of subordinate employees to adequately monitor and respond to prisoners suffering from serious medical conditions;

D.  compensatory damages in an amount exceeding $75,000, and, against Defendants sued in their individual capacity, punitive damages in excess of $75,000;

E.  prejudgment and postjudgment interest:

F.  costs and reasonable attorneys' fees; and

G.  such other relief as the Court deems fair and equitable.

Respectfully submitted,

*/s/Eleni A. Drakatos*
Eleni A. Drakatos (0076269)
**YACOBOZZI | DRAKATOS, LLC**

                        1243 South High Street
                        Columbus, Ohio 43206
                        Phone: (614) 443-2800
                        Fax: (614) 443-2801
                        E-mail: edrakatos@ydlegal.com

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues and defenses triable to a jury.

                        */s/Eleni A. Drakatos*
                        Eleni A. Drakatos (0076269)